## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**RANDY WILSON**                                                                                    **PLAINTIFF**

**v.**                                                                          **No. 4:21CV67-GHD-RP**

**M.D.O.C., ET AL.**                                                                           **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Randy Wilson, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants failed to protect him from assault by other inmates. The defendants have moved for summary judgment; the plaintiff has not responded, and the deadline to do so has expired. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and the instant case will be dismissed with prejudice on the merits, and, in the alternative, without prejudice for failure to exhaust administrative remedies.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the

nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts[1]**

In 2016[2] Randy Wilson was drugged by other inmates; then inmate James Carter beat him, sexually assaulted him, and forced him to make a video of himself throwing a doll in a carrier against a wall. Doc. 1 at 6-7. Carter then "made [him] to do nasty things to more people" so that he would not be killed. *Id.* Carter then shot him twice and stabbed him in the neck.[3] *Id.* Someone took a video of the 2016 events and shared it with other inmates. Wilson was attacked multiple times afterwards, and he believes the attacks are because the other inmates become enraged after seeing the video. One such attack occurred on March 13, 2021, (some five years after the 2016 video was recorded) by an inmate nicknamed "Money G;" Wilson suffered two broken arms as a result. CM/ECF Doc. 1 at 3, 5. During his stay in the hospital following the March 13 attack, Wilson sent a letter to Superintendent

---

[1] For the purposes of this memorandum opinion and final judgment only, the court assumes that the plaintiff's allegations are true, unless they are squarely contradicted by documentary evidence in the record.

[2] It does not appear that the plaintiff seeks relief in this case based upon the events of 2016, but has included them to give context to the 2021 events. However, even he were seeking such relief, those claims would be barred by the applicable statute of limitations. A federal court borrows the forum state's general or residual personal injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249 (1989); *Gartrell v. Gaylor*, 981 F.2d 254 (5th Cir. 1993). In Mississippi, that statute is MISS. CODE ANN. § 15-1-49, which allows a litigant only three years to file such an action, and the statute begins to run "at the moment the plaintiff becomes aware he has suffered an injury or has sufficient information to know he has been injured." *Russel v. Board of Trustees of Firemen, etc.*, 968 F.2d 489 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1266 (1993) (citations omitted). Clearly, the plaintiff would have been aware of the alleged injuries when they occurred in 2016; as such, the limitations period expired three years later in 2019. The instant case was filed in 2021, after the expiration of that period.

[3] The record contains no evidence that this incident occurred. Wilson's institutional record shows that he was housed at Central Mississippi Correctional Facility ("CMCF") in Rankin County in May and September 2016; *See* Ex. "A," Plaintiff's Institutional Record at MDOC-WILSON-000002. There is, however, no evidence in his inmate file – or his medical records – of any such incident. See Ex. "A" at MDOC-WILSON-000038—39 (case manager entries in offender log in 2016); MDOC-WILSON-000063 (incident report log in 2016); *see also* Ex. "B," Plaintiff's Medical Record Excerpts, at MDOC-WILSON-000701—841 (Plaintiff's medical record excerpts from 2016). In addition, Wilson has not included his alleged abuser, Carter, on his "keep separates" list. See Ex. "D," Plaintiff's "Keep Separate" List.

Tim Morris[4]. CM/ECF Doc. 1 at 3, 5. Wilson alleges that he also submitted a grievance regarding the attack to the Administrative Remedy Program ("ARP"). *Id.* However, the ARP Director has no record of receiving such a grievance. CM/ECF Doc. 44-3, MDOC-Wilson-000001. He raises another claim regarding an unrelated incident occurring in 2016 where he was struck in the head with a lock by another inmate, Offender Ricky Craft. CM/ECF Doc. 1 at 6.

### Failure to Exhaust Administrative Remedies

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress created the exhaustion requirement to weed out the frivolous claims from the colorable ones. *Id.* at 203.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or

---

[4] Though Wilson alleges the letter was addressed to Commissioner Burl Cain, based on the record, it appears that his letter was actually sent to Superintendent Tim Morris. Morris responded to Wilson's letter, stating that he would forward the letter to the appropriate person to review it. Doc. 1 at 4. The events leading to Wilson's injuries arose during his housing in Unit 28 at Parchman; however, he was relocated to Unit 31 upon his release from the hospital. Plaintiff's Institutional Record, at MDOC-WILSON-000007. On June 24, 2021, Chief of Security Sonja Stanciel responded to Wilson's letter regarding his safety at Unit 31, stating, ". . . you were interviewed . . . and stated you love it at Unit 31 and you are not having any safety issues . . . . You continued and stated you did not want to be moved from Unit 31. I trust your complaint ha[s] been resolved." Ex. "A," Plaintiff's Institutional Record, at MDOC-WILSON-000052.

otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its prisons. Under this

statutory authority, the Mississippi Department of Corrections created the Administrative

Remedy Program ("ARP") through which an inmate may seek formal review of a grievance

relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v.

Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994).

      The two-step ARP process begins when an inmate first submits his grievance in writing to the

prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-

KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the

grievance and determines whether to accept it into the ARP process. *Id*. The screening phase operates

as a filter – applied before the formal grievance process begins – to remove procedurally defective or

otherwise invalid grievances.

      As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a

procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during

the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance

process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan.

26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*,

No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during

initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-

0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also  Robinson

v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana

initial screening provision of prison grievance process). However, if the defects in the original

grievance were minor ("technical" or "matters of form") an inmate may submit a corrected

grievance within five days of the rejection:

      If a request is rejected for technical reasons or matters of form, the inmate shall have
      five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf  (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official, who then issues a First Step Response to the inmate.  *Howard, supra*.  If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate grievance form and sending it to the Legal Claims Adjudicator.  *Id.*  The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process.  *Id.*  Issuance of the Second Step Response is the only way to complete the grievance process.  If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

The Inmate Handbook requires that a grievance "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident."  *See Pinkton v. Jenkins*, 2019 WL 1089087, *3 (N.D. Miss. 2019).  Although a plaintiff is "not required to present specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it."  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description."  *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed grievance regarding the actions of the two defendants).

Randy Wilson states that he sent a letter to "the Commissioner"[5] through "hand mail" requesting assistance and protection. Such a letter does not constitute a proper grievance, as it does not conform to the grievance procedure described in detail above. Wilson alleges that he also submitted a grievance regarding his broken arms to the Administrative Remedy Program; however, the Administrative Remedy Program at CMCF has no record that Wilson filed a grievance related to an incident with inmates breaking his arms or hitting him in the head. See Ex. "C," Affidavit of Paul R. Pennington, Jr., Director for the Administrative Remedy Program, at MDOC-WILSON-000001. As Wilson's prison administrative record does not contain a grievance concerning the failure-to-protect claim at issue, the defendants have satisfied their initial summary judgment burden. *See Shockley v. University of TX Med. Branch*, 2009 WL 602568, at *4 (N.D. Tex. Mar. 9, 2009) ("By pointing the Court to the absence of such grievance, Defendants met their initial summary judgment burden to show there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies.") As such, Wilson has not come forward with any evidence establishing a genuine issue for trial. At this point, the court may not, "in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Hence, Wilson has not exhausted his administrative remedies, and the instant case will be dismissed without prejudice for that reason.

### Wilson's Failure to Protect Claim Fails

Plaintiff Randy Wilson claims that the defendants failed to protect him from attack at the hands of another inmate. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted).

---

[5] Wilson did not include a copy of this correspondence. However, as discussed above, based on the record, his letter was sent to Superintendent Tim Morris, not Commissioner Burl Cain.

Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defender's Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843.

However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

### Defendants Nurse Rease, Tim Morris, and David Honeycutt Must Be Dismissed, as the Plaintiff Makes No Reference to Them in the Factual Allegations of His Complaint

For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the

constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). In this case, the plaintiff does not mention defendants Nurse Rease, Tim Morris, or David Honeycutt in the factual allegations of his complaint. As he has alleged no wrongdoing on their part, they will be dismissed with prejudice from this case.[6]

### No Allegations Regarding Failure to Protect Against Defendant Commissioner Burl Cain

Wilson claims that he wrote a letter to "the Commissioner" asking for protection while he was in the hospital – but he wrote that letter *after* the attack. See CM/ECF Doc. 1 at 5. He does not allege that, prior to the attack, he told the defendants – or any other staff member – that he feared for his safety in Unit 28. Neither does he allege that he was exposed to and attacked by an inmate he had previously red-tagged[7] or complained about. There is no documentation showing that he told staff members that he was afraid of Offender "Money G" or Ricky Craft (the inmates who allegedly assaulted him) or that he had conflicts with them before the incidents described in his complaint.

For these reasons, Randy Wilson has not alleged any facts to show that any defendant knew that he faced a substantial risk of harm before he suffered his injuries. Hence, in the absence of knowledge that these inmates posed a threat to Wilson, the defendants, including Burl Cain, could not

---

[6] Where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved or defaulting defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). Defendant Nurse Rease has not been served with process but will nonetheless be dismissed from this case, as the dismissal of the other defendants for failure to exhaust and on the merits applies equally to her.

[7] An inmate who fears that another inmate poses a threat to his safety may request a "Red Tag" to be placed in his file – which ensures that the two inmates will be kept separate from each other.

have been deliberately indifferent to their Eighth Amendment duty to protect him from attack by those inmates.[8]

### Inmates James Carter and Money G Are Not Proper Defendants in a Suit Filed Under 42 U.S.C. § 1983

Relief under 42 U.S.C. § 1983 is only available to preserve a plaintiff's federal constitutional or statutory rights against a defendant acting *under color of state law*. *See* 42 U.S.C. § 1983. Thus, a § 1983 plaintiff may only pursue his civil rights claims against someone who is a state actor. Defendants James Carter and Money G are inmates in the custody of the Mississippi Department of Corrections. As such, they do not qualify as state actors under 42 U.S.C. § 1983. *See, Albright v. Longview Police Dep't*, 884 F.2d 835, 841 (5th Cir. 1989). Thus, Wilson's allegations against these two defendants will be dismissed for failure to state a claim upon which relief could be granted.

### M.D.O.C. Enjoys Eleventh Amendment Sovereign Immunity

Defendant Mississippi Department of Corrections ("M.D.O.C.") enjoys sovereign immunity from instant suit. The principle of sovereign immunity is reflected in the Eleventh Amendment, which precludes suits brought by private citizens against states in federal courts unless the State has waived its immunity. U.S. Const. amend. XI; *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Congress did not abrogate Eleventh Amendment immunity in enacting § 1983,

---

[8] In any event, the court notes that, at the time Wilson sustained his arm and shoulder injuries, he told physicians at the Mississippi State Penitentiary that those injuries arose from an *accident*, not an assault:

> Inmate account of occurrence: Patient alleges him et [sic] other inmate were popping each others [sic] back et [sic] it went to [sic] far, reports shoulders et [sic] collar bones popped, unable to move arms only can move fingers w/o difficulty[.]

Ex. "B" at MDOC-WILSON-001732—33. Hence, Wilson did not merely fail to provide the defendants or other staff notice of a potential danger to his safety; instead, contrary to his allegations in this case, he told medical providers that his injuries did not even arise from an attack.

*Quern v. Jordan*, 440 U.S. 332, 341 (1979); nor has Mississippi waived its right to sovereign immunity. *See* Miss. Code. Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.")

An exception exists to Eleventh Amendment immunity: suits against state officials in their official capacities seeking prospective injunctive relief. In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity which allows a state official to be sued in his or her official capacity for injunctive relief. *Ex parte Young*, 209 U.S. at 159–160. "This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). A state official may be sued in his official capacity for injunctive relief under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985), n. 14 (1985) (*citing Ex parte Young*, 209 U.S. at 159–160).

However, one of the requirements for the applicability of *Ex parte Young*, is that a complaint allege that defendants are *currently* violating federal law, not simply that the defendants have done so in the past. *See Green v. Mansour*, 474 U.S. 64, 71–73 (1985). Wilson has not alleged an ongoing violation of federal law by the defendants; as such, *Ex Parte Young* does not apply. For these reasons, the Mississippi Department of Corrections, an arm of the State of Mississippi[9], as well as the defendants in their official capacities, will be dismissed from this case, as the Eleventh Amendment

---

[9] "The Mississippi Department of Corrections is a department of the state of Mississippi and enjoys the same immunity as the state itself." *Hines v. Mississippi Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000).

prohibits actions against a state actor without the state's consent. *Brooks v. George County, Mississippi*, 84 F.3d 157, 168 (5th Cir. 1996).

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted:

(1) Nurse Rease, Timothy Morris, Burl Cain, and David Honeycutt will be dismissed with prejudice from this suit for failure to state a claim against them upon which relief could be granted;

(2) Inmates James Carter and "Money G" will be dismissed with prejudice from this suit, as they are not state actors and are not amenable to suit under 42 U.S.C. § 1983;

(3) M.D.O.C. and the State defendants in their official capacities will also be dismissed, as they are cloaked in sovereign immunity under the Eleventh Amendment of the United States Constitution, and, in the alternative; and

(4) This case will be dismissed for failure to exhaust administrative remedies.

**SO ORDERED**, this, the  25th  day of January, 2023.

_____

SENIOR U.S. DISTRICT JUDGE